**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) ) | |
| BANK OF NEW YORK MELLON CORP. FOREX TRANSACTIONS LITIGATION | ) ) ) ) | 12 MD 2335 (LAK) ECF Case |
| This Document Relates to: | ) ) | |
| *Louisiana Municipal Police Employees' Retirement System v. The Bank of New York Mellon Corp.* | ) ) ) | 11 Civ. 9175 (LAK) |

**JOINT OPPOSITION OF
THE BANK OF NEW YORK MELLON CORPORATION AND
OFFICER AND DIRECTOR DEFENDANTS TO PLAINTIFFS' MOTION TO
LIFT THE PSLRA DISCOVERY STAY**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

    I.    DECIDING THE PENDING MOTIONS TO DISMISS IN *LAMPERS* WILL REDUCE THE DISCOVERY BURDENS IN THE MDL AND PROMOTE THE CONGRESSIONAL POLICY UNDERLYING THE PSLRA .................................................................................................. 3

        A.    This Court should not defer consideration of BNYM Corp.'s argument that its offering documents contained no plausibly misleading statements .................................................................. 4

        B.    This Court should not defer consideration of BNYM Corp.'s argument that Plaintiffs have failed to make out a strong inference that BNYM Corp. intended to defraud its *investors* ................................... 6

    II.    THIS COURT SHOULD NOT LIFT THE PSLRA STAY BECAUSE PLAINTIFFS HAVE NEITHER SOUGHT PARTICULARIZED DISCOVERY NOR SHOWN UNDUE PREJUDICE ......................................... 10

CONCLUSION ...................................................................................................................12

## TABLE OF AUTHORITIES

**Page**

**Cases:**

*380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07-cv-1204, 2007 WL 2049738 (S.D.N.Y. July 18, 2007) .................................................................................................11

*American Funds Sec. Litig., In re*, 493 F. Supp. 2d 1103 (C.D. Cal. 2007) ................................11

*AOL Time Warner, Inc. Sec. & ERISA Litig., In re*, No. 02-cv-5575, 2003 WL 21729842 (S.D.N.Y. July 25, 2003) ..............................................................................10

*AOL Time Warner, Inc. Sec. & ERISA Litig., In re*, No. 02-cv-8853, 2003 WL 22227945 (S.D.N.Y. Sept. 26, 2003) ....................................................................11, 12

*Bank of Am. Corp. Sec., Derivative, & ERISA Litig., In re*, No. 09-mdl-2058, 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ...........................................................................12

*BISYS Sec. Litig., In re*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005).......................................................7

*Chill v. General Elec. Co.*, 101 F.3d 263 (2d Cir. 1996)..................................................................7

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009).................................................................................................3, 7

*Fannie Mae Sec. Litig., In re*, 362 F. Supp. 2d 37 (D.D.C. 2005)..................................................11

*Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384 (S.D.N.Y. 2001) ................................11

*Lehman Bros. Sec. & ERISA Litig., In re*, No. 09-md-2017 (S.D.N.Y. Dec. 11, 2009)................12

*Marsh & McLennan Cos., In re*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................8

*Merck & Co. Sec. Litig., In re*, No. 08-cv-2177, 2009 WL 1456615 (D.N.J. May 22, 2009) .............................................................................................................................12

*Mishkin v. Ageloff*, 220 B.R. 784 (S.D.N.Y. 1998) ................................................................10, 11

*Mori v. Saito*, 802 F. Supp. 2d 520 (S.D.N.Y. 2011).....................................................................10

*Optionable Sec. Litig., In re*, No. 07-cv-3753, 2008 WL 4629985 (S.D.N.Y. Oct. 20, 2008...................................................................................................4

*Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375 (S.D.N.Y. 2004)...................................4

*Refco, Inc., In re*, No. 05-cv-8626, 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006)...................10, 11

*SG Cowen Sec. Corp. v. United States Dist. Ct. for N. Dist. of Cal.*, 189 F.3d 909 (9th Cir. 1999) .................................................................................................................. 9

*Sisk v. Guidant Corp.*, No. 05-cv-1658, 2007 WL 1035090 (S.D. Ind. Mar. 30, 2007) ................ 12

*Smith Barney Transfer Agent Litig., In re*, No. 05-cv-7583, 2006 WL 1738078 (S.D.N.Y. Jun. 26, 2006) .......................................................................................................... 4

*Southeastern Pennsylvania Transp. Auth. v. The Bank of New York Mellon Corp.*, No. 12-cv-3066 (S.D.N.Y. Jan. 23, 2013) ............................................................................ 1, 8, 9

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190 (2d Cir. 2008) ............................................................................................................. 7

*United States v. The Bank of New York Mellon*, No. 11-cv-6969 (S.D.N.Y. Apr. 24, 2013) ................................................................................................................... 1, 6, 7, 9

*Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304 (S.D.N.Y. 2011) ................................................ 7

*WorldCom, Inc. Sec. Litig., In re*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) ..................................... 11

**Statutes:**

Private Securities Litigation Reform Act
    15 U.S.C. § 78u-4(b)(3)(B) ................................................................................................. 3, 10

Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*
    15 U.S.C. § 77z-1(b)(1) ............................................................................................................ 3

**Other Materials:**

H.R. Conf. Rep. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ......................................... 4
S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ................................................ 10

## INTRODUCTION

At the parties' May 17 status conference, this Court was inclined to "deny without prejudice, put off, administratively close or in other ways get off the table for the time being the motions to dismiss in the securities and customer cases . . . and [allow those cases] to proceed to discovery." 5/17/2013 Tr. 3:9-17. However, the court also said it would "change [its] mind if it's warranted." *Id.* at 14:9-10. Defendants remain hopeful the Court will reverse course and decide each of the outstanding motions to dismiss. But they are also aware of the Court's broad discretion in determining how to decide successive motions in an MDL proceeding. We write to urge the Court to exercise that discretion to give full consideration to the pending motions to dismiss in *Louisiana Municipal Police Employers' Retirement System v. The Bank of New York Mellon Corp.*, No. 11-cv-9175 (S.D.N.Y.) ("*LAMPERS*"), a private securities class action.[1] With respect to those motions, this Court should be guided by Congress's clear policy judgment, expressed in the Private Securities Litigation Reform Act ("PSLRA"), that federal district courts should protect issuers (and their officers and directors) from the burdens of discovery until the court sustains the legal sufficiency of the underlying complaint.

*LAMPERS* presents the very concerns that motivated the passage of the PSLRA. This Court's inclination to lift the discovery stay, notwithstanding this statutory guidance, appears to rest on the assumption that, in light of the Court's previous opinions,[2] "some part of the securities case" will likely move forward if the motions are adjudicated. 5/17/2013 Tr. 19:14.

---

[1] The *LAMPERS* plaintiffs ("Plaintiffs") allege that Bank of New York Mellon Corp. (collectively with its subsidiaries "BNYM"; separately, "BNYM Corp."), its officers ("Officers"), directors ("Directors"), Jorge Rodriguez, and underwriters of two offerings of BNYM Corp.'s common stock ("Underwriters") violated various provisions of the Securities Exchange Act of 1934 ("Exchange Act") and the Securities Act of 1933 ("Securities Act"). *See* Dkt. No. 93 ("Compl."), at ¶¶ 156-189. Currently pending are motions to dismiss by BNYM Corp. (Dkt. No. 118), Officers and Directors (Dkt. No. 120), Underwriters (Dkt. No. 113), and Jorge Rodriguez (Dkt. No. 115).

[2] *See Southeastern Pennsylvania Transp. Auth. v. The Bank of New York Mellon Corp.*, No. 12-cv-3066 (S.D.N.Y. Jan. 23, 2013) (Dkt. No. 99) ("*SEPTA*") and *United States v. The Bank of New York Mellon*, No. 11-cv-6969 (S.D.N.Y. Apr. 24, 2013) (Dkt. No. 54) ("*DOJ Action*").

That assumption merits careful reconsideration. BNYM's motion to dismiss raises case-dispositive arguments, grounded in controlling Second Circuit precedent, that this Court had no opportunity to consider in its previous opinions. In particular, Counts Three, Four, and Five of the Complaint – alleging violations of the Securities Act – rest exclusively on allegedly misleading statements in BNYM Corp.'s annual and quarterly financial reports, as incorporated into securities offering documents. Neither *SEPTA* nor the *DOJ Action* considered BNYM Corp.'s financial reports. Permitting these Counts to survive will needlessly entangle two additional sets of Defendants – the Underwriters, and BNYM Corp.'s outside Directors – in a discovery process that this Court has previously observed will impose a "staggering burden" on all participants. 5/23/2012 Tr. 36:7. However this Court ultimately resolves Plaintiffs' claim under the Exchange Act based on BNYM's marketing website, dismissal of the Securities Act claims would promote important, congressionally mandated policies, and would spare these additional Defendants from any further participation in the MDL proceedings. Dismissal of those claims would also significantly reduce BNYM's discovery burden.

      Nor does this Court's decision in the *DOJ Action* resolve the pending motions to dismiss the Exchange Act claims. The government's allegations in the *DOJ Action* focused on technical pricing representations arising from a complex back-office foreign exchange service offered by a BNYM Corp. operating subsidiary. Plaintiffs fail to allege with particularity that the parent-issuer's senior executive officers had knowledge or responsibility for those representations. Indeed, the Complaint is little more than an improper effort to transform a customer-focused fraud alleged by the government into a private securities class action alleging fraud on an issuer's investors. That attempted sleight of hand runs afoul of controlling Second Circuit precedent, which makes clear that a company's alleged fraudulent intent toward its *customers*

does not raise a strong inference of fraud as to its *securities investors*. *See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 200-03 (2d Cir. 2009) ("It seems implausible to have both an intent to earn excessive fees for the corporation and also an intent to defraud [shareholders] by losing vast sums of money."). For these reasons, we request that the Court reconsider its assumption that Plaintiffs' simple cut-and-paste of the fraud allegations in the *DOJ Action* necessarily states a claim under the Exchange Act. *See* Dkt. No. 119 ("Mem"), at 27-34.

Despite the Court's understandable desire to manage its docket efficiently, we therefore respectfully submit that the proper exercise of its discretion should lead it to carefully evaluate the adequacy of the *LAMPERS* complaint. And, because Plaintiffs have not even attempted to meet the statutory standard for lifting the PSLRA stay, the Court should leave the stay in place while it decides Defendants' outstanding motions to dismiss.[3]

**ARGUMENT**

**I.    DECIDING THE PENDING MOTIONS TO DISMISS IN *LAMPERS* WILL REDUCE THE DISCOVERY BURDENS IN THE MDL AND PROMOTE THE CONGRESSIONAL POLICY UNDERLYING THE PSLRA**

Deciding the pending motions to dismiss is the appropriate exercise of this Court's discretion given the strong congressional policy judgment embodied in the PSLRA. The PSLRA provides that "all discovery and other proceedings" in a private securities action "shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B) (Exchange Act); *see* 15 U.S.C. § 77z-1(b)(1) (same for Securities Act). Accordingly, "discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the

---

[3] Contrary to the Court's suggestion at the status conference, this Court has not previously had any occasion to consider a motion to lift the PSLRA's mandatory stay. Plaintiffs have never filed a motion to lift the stay, but raised the issue for the first time in the parties' Joint Status Report. *See* Dkt. No. 140 ("Status Rep."), at 9-10. This Court has not previously considered whether Plaintiffs have presented a factual or legal basis for lifting that stay, nor has BNYM briefed the issue. As discussed below, Plaintiffs do not meet that standard. *See infra* pp. 10-12.

complaint." *In re Optionable, Inc. Sec. Litig.*, No. 07-cv-3753, 2008 WL 4629985, at *1 (S.D.N.Y. Oct. 20, 2008) (Kaplan, J.) (internal quotations omitted).  This reflects Congress's judgment that judicial review of the adequacy of federal securities complaints will help spare defendants from the burdens of discovery and other pre-trial matters in meritless cases, and will limit plaintiffs' ability to extract "extortionate 'settlements' . . . from issuers."  H.R. Conf. Rep. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730; *see Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (noting that "the entire purpose of the stay provision is to avoid saddling defendants with the burden of discovery in meritless cases").[4]

    Deciding the pending motions to dismiss would vindicate the PSLRA's purposes in this case.  Defendants' motions identify case-dispositive defects in Plaintiffs' complaint that this Court has not addressed in its prior opinions.  Deciding these issues would narrow the scope of discovery in the MDL significantly and avoid hardships for both BNYM and third parties.  Thus, while BNYM recognizes this Court's undeniably legitimate goal of ensuring the orderly progress of this MDL, it respectfully submits that the best way to accomplish that goal, in keeping with the PSLRA's statutory mandate, is to decide (and ultimately grant) the motions to dismiss.

    **A.**    **This Court should not defer consideration of BNYM Corp.'s argument that its offering documents contained no plausibly misleading statements**

    Although *LAMPERS* and the *DOJ Action* are based on essentially identical allegations concerning foreign exchange pricing practices, the alleged actionable misstatements made to investors in the *LAMPERS* Complaint differ dramatically from the alleged misstatements made to customers in the *DOJ Action*.  Of the 29 paragraphs that the Complaint devotes to BNYM Corp.'s alleged misstatements to investors, 25 concern statements in financial documents such as

---

[4] That said, it bears emphasis that the PSLRA contains "no exception to the discovery stay for cases in which discovery would not burden the defendant."  *In re Smith Barney Transfer Agent Litig.*, No. 05-cv-7583, 2006 WL 1738078, at *3 (S.D.N.Y. Jun. 26, 2006).  This Court can and should deny Plaintiffs' motion solely because they have failed to satisfy the PSLRA statutory standard described below.  *See id.*; *infra* pp. 10-12.

descriptions of historical foreign-exchange revenue and BNYM Corp.'s general business philosophy. *See* Compl. ¶¶ 84-108. The Complaint devotes only four paragraphs to the alleged misstatements on BNYM's marketing website that this Court addressed in the *DOJ Action*. *See id.* ¶¶ 109-112. However the Court may view the website, *see infra* pp. 6-9, the separate statements in BNYM Corp.'s financial filings were not plausibly misleading. *See* Mem. 12-23; Dkt. No. 131 ("Reply"), at 4-7; Dkt. No. 114 at 8-16.

A finding that Plaintiffs' BNYM's financial filings were not plausibly false or misleading would require dismissal of Plaintiffs' three Securities Act claims in their entirety. That would eliminate from the entire MDL the seven investment banks that have been sued as Underwriters exclusively under the Securities Act, as they are not defendants in any of the other cases. *See* Compl. ¶¶ 165-186. In combination with dismissal of the derivative action, on which this Court has indicated that it intends to rule, *see* 5/17/2013 Tr. 10:10-14, dismissal of the Securities Act claims in the *LAMPERS* case would also eliminate fifteen Directors from the MDL.[5] *See* Compl. ¶¶ 156-164 (Exchange Act claims not asserted against underwriters and directors). Entangling the Underwriters and Directors in discovery is not only costly and burdensome for those parties, but also creates unnecessary additional complexities for other parties in the MDL. Adjudication (and dismissal) of the Securities Act claims would eliminate those complexities and reduce the burdens of discovery for all involved.

Further, adjudicating BNYM's motion to dismiss the Securities Act claims would not involve retreading any ground that this Court has covered in the *DOJ Action* and *SEPTA*. None

---

[5] Those fifteen Directors are Ruth E. Bruch, Nicholas M. Donofrio, Steven G. Elliott, Gerald L. Hassell (currently an officer of BNYM Corp. but not sued in that capacity), Edmund F. Kelly (note that this is a different person from former CEO Robert P. Kelly), Richard J. Kogan, Michael J. Kowalski, John A. Luke, Jr., Robert Mehrabian, Mark A. Nordenberg, Catherine A. Rein, William C. Richardson, Samuel C. Scott III, John P. Surma, and Wesley W. von Schack. *See* Compl. ¶¶ 27-41. As noted in the text, some of these individuals (but not Underwriters) are also defendants in *In re The Bank of New York Mellon Corp. Shareholder Deriv. Litig.*, No. 11-cv-08471 (S.D.N.Y.).

of the statements (such as those about "best execution") that this Court previously considered are repeated in the financial filings that form the exclusive basis of the Securities Act claims. And Plaintiffs do not even attempt to argue that the marketing website analyzed in this Court's previous cases can give rise to Securities Act liability. *See* Mem. 25 n.39; Compl. ¶¶ 165-168 (limiting Securities Act allegations to "Offering Materials"). Instead, those claims rise and fall with Plaintiffs' legal contention that BNYM Corp. had a duty to disclose its subsidiary's standing instruction pricing methodology in the parent's securities offering documents. This Court can decide that issue in BNYM's favor without departing in any way from its ruling in the *DOJ Action*. *See* Mem. 19-22. Indeed, this Court held in the *DOJ Action* that BNYM had no independent duty to disclose to customers its standing instruction pricing methodology. *See DOJ Action* at 75-78. The same conclusion applies with even greater force to Plaintiffs' theory that BNYM Corp. had a duty to disclose its subsidiary's pricing practices to investors. *See* Mem. 19-22; Reply 4-7.

### B. This Court should not defer consideration of BNYM Corp.'s argument that Plaintiffs have failed to make out a strong inference that BNYM Corp. intended to defraud its *investors*

1. As set forth in BNYM Corp.'s motion to dismiss, Plaintiffs fail to allege facts creating a strong inference that BNYM Corp. intended to defraud its investors. *See* Mem. 27-34; Reply 7-10. This Court has not considered that argument. The *DOJ Action* held (at 48) that the United States had pleaded adequately that BNYM Corp.'s banking subsidiary "intended to deceive *its customers* about the nature of its pricing practices." (Emphasis added). Under controlling Second Circuit law, however, whether BNYM Corp. also intended to defraud its *investors* presents an entirely separate issue. As the Second Circuit has made clear, a company's alleged desire to extract "'excessive fees'" from its customers – though perhaps supporting an

inference of fraudulent intent as to those customers – actually *weakens* any comparable inference with respect to the company's investors.  Mem. 28 (quoting *ECA*, 553 F.3d at 200).  Indeed, an alleged intent to maximize corporate profits by "'duping other institutions'" does not suggest that a company also intends "'to defraud its own investors.'"  *Id.* (quoting *ECA*, 553 F.3d at 203).

Plaintiffs' failure to allege that any officer of BNYM Corp. had knowledge of BNYM's marketing website is fatal to Plaintiffs' efforts to create a strong inference of an intent to defraud BNYM Corp. investors.  *See* Mem. 29-34; Reply 7-10.[6]  In fact, Plaintiffs have so little to say about BNYM Corp.'s officers and directors that most of them are not even mentioned in Plaintiffs' Opposition.  *See* Dkt. No. 133 at 7-8.  Similarly, this Court's prior analysis of the website centered not on BNYM Corp.'s senior management, but on the alleged knowledge of employees in the Global Markets division of a BNYM Corp. subsidiary.  *See DOJ Action* at 48-62.  None of those employees was an officer or director of BNYM Corp., spoke to investors on BNYM Corp.'s behalf, or had any alleged involvement with BNYM Corp.'s financial disclosures.  *See* Mem. 30-31, 33 & n.48; Reply 9-10 & n.11.

The alleged knowledge of employees at an operating subsidiary may bear on their direct employer's state of mind toward its customers, but it has little relevance to the separate question of whether their employer's parent independently formed the intent to defraud its own investors.  *See Chill v. General Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (noting that "whether [a subsidiary] defrauded plaintiffs and whether its parent . . . defrauded plaintiffs are different questions"); *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 317 (S.D.N.Y. 2011) ("the mere existence of a parent-subsidiary . . . relationship is not on its own sufficient to impute the scienter

---

[6] *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (requiring securities plaintiffs to "create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter"); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 442 (S.D.N.Y. 2005) (Kaplan, J.) (declining to infer scienter from employee who had not held a "particularly senior position").

of the subsidiary to the parent"). This Court already has rejected a similar attempt to impute to BNYM Corp. the alleged "unlawful activity" of an operating subsidiary, recognizing that such imputation would "eviscerate . . . long established respect for the corporate form" and dramatically extend "doctrines of shareholder liability." *SEPTA* at 53 (internal quotations omitted). The same concerns counsel against inferring a securities fraud by BNYM Corp. from the alleged actions of one of its subsidiaries.[7]

The arguments of Plaintiffs' counsel at the recent status conference only reinforce that conclusion. Counsel there observed that BNYM Corp.'s 2010 10-K report shows BNYM Corp.'s 15 executive officers also serving as officers of its banking subsidiary. *See* 5/17/2013 Tr. 11-13 (citing Dkt. No. 122-4 at 30-32).[8] But Plaintiffs have not alleged that any of those individuals knew of any of the asserted affirmative misrepresentations that this Court found sufficient to state a claim in the *DOJ Action*. *See* Mem. 29-34; Reply 8-10. On the contrary, the entirety of the inference that Plaintiffs ask this Court to draw with respect to the intent of the parent-issuer rests largely on a single email allegedly received by only two Officers. That email suggests (at most) an awareness that BNYM *had not disclosed* its pricing practices to its customers. *See* Mem. 13-15 & 30-31; Reply 7-8. But this Court recognized in both *SEPTA* and the *DOJ Action* that "commercial merchants generally are under no obligation to disclose their underlying costs or profits" and that "there are perfectly legitimate reasons for a merchant not to

---

[7] *In re Marsh & McLennan Cos.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006), which Plaintiffs cite (at 5) in their section of the Joint Status Report, is not to the contrary. There, the shareholders "allege[d] more than [the parent's] mere reliance on [the subsidiary's] financial controls"; they alleged the parent's "awareness, reckless disregard, and complicity in the misbehavior at [the subsidiary]." *Id.* at 482-83. Contrary to Plaintiffs' suggestion (at 4), the court did not endorse the simplistic proposition that a subsidiary's culpability should "routinely" be imputed to its parent. Rather, the court credited particular allegations that the parent "actively oversaw" the "'improper business practices'" at the subsidiary. *Id.* at 483. Here, Plaintiffs have alleged no plausible or particularized basis for any similar finding. *See* Reply 7-8.

[8] Counsel did not mention Jorge Rodriguez in his list at the hearing. As BNYM Corp. and Mr. Rodriguez have previously made clear, Mr. Rodriguez was not an officer of BNYM Corp., and Plaintiffs do not properly allege that he made statements to investors on BNYM Corp.'s behalf. *See* Mem. 15 n.26; Reply 9 n.11; Dkt. No. 117 at 5.

8

provide transparency to its customers as to underlying aspects of its operations." *DOJ Action* at 77; *see SEPTA* at 49 n.186. Plaintiffs' mere allegation that the parent company was aware of a lawful failure to provide pricing transparency to customers falls well short of raising a strong inference of fraudulent intent.[9]

**2.** As with the Securities Act claims, *see supra* pp. 4-6, dismissing the Exchange Act claims would materially reduce the burdens of discovery for all remaining parties in this litigation. Those claims threaten to embroil the parties in discovery far beyond what is relevant to the other MDL cases. As an example, the *LAMPERS* Plaintiffs have requested "all documents relating to" certain of BNYM Corp.'s stock offerings, communications with Underwriters, and draft SEC filings and earnings-call scripts. *See* Plfs.' Exec. Cmte. RFP Nos. 8-9 (Jan. 17, 2003). They also have acknowledged that the stock offering documents "do[] not have specific relevance to the other MDL-actions." Ltr. from D. Chiplock to R. Beynon at 2-3 (Mar. 12, 2013). Thus, the securities action will require BNYM to produce documents from a set of investor-relations custodians – BNYM has identified nine such custodians, and anticipates that Plaintiffs may seek production from additional custodians – whose files it would otherwise have no need to collect or review. Because BNYM Corp.'s investor disclosures reflected extensive attorney input, the production of such documents will likely require time-consuming review and redaction to preserve the attorney-client privilege. Dismissal of the securities action would spare BNYM that burden. It also would obviate the need for expensive fact and expert discovery into

---

[9] At the status conference, this Court asked whether these issues of imputation "would best be resolved on a factual record" at summary judgment. 5/17/2013 Tr. 6:9-10. Although BNYM is confident that discovery will support its argument on this point, the PSLRA does not require an issuer to disprove in discovery what a plaintiff fails to allege with particularity. Indeed, allowing Plaintiffs to build a factual record to support an argument not properly alleged in the Complaint would "contravene the purpose of the Act's heightened pleading standards." *SG Cowen Sec. Corp. v. United States Dist. Ct. for N. Dist. of Cal.*, 189 F.3d 909, 912-13 (9th Cir. 1999) (granting mandamus petition and reversing district court's decision to lift the stay for plaintiffs to "uncover facts sufficient to satisfy the Act's pleading requirements").

the timing and cause of fluctuations in BNYM Corp.'s stock price.  *See* Compl. ¶ 153.  BNYM should not be required to incur such expenses in connection with meritless allegations.

## II. THIS COURT SHOULD NOT LIFT THE PSLRA STAY BECAUSE PLAINTIFFS HAVE NEITHER SOUGHT PARTICULARIZED DISCOVERY NOR SHOWN UNDUE PREJUDICE

This Court should maintain the PSLRA stay pending its resolution of BNYM Corp.'s motion to dismiss.  The PSLRA prohibits discovery while a motion to dismiss is pending unless a "court finds upon the motion of [plaintiff] that particularized discovery is necessary to preserve evidence or to prevent undue prejudice."  15 U.S.C. § 78u-4(b)(3)(B).  Congress contemplated that this standard will be met only in "exceptional circumstance[s]."  S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679.[10]  Because Plaintiffs have not argued that discovery is necessary to preserve evidence, this Court should lift the PSLRA stay only if (1) Plaintiffs seek "particularized discovery" that will (2) "prevent undue prejudice."  15 U.S.C. § 78u-4(b)(3)(B); *see Mishkin v. Ageloff*, 220 B.R. 784, 793 (S.D.N.Y. 1998).  While BNYM recognizes this Court's substantial interests in managing the MDL efficiently, BNYM respectfully submits Plaintiffs have failed to meet the statutory requirements for lifting the PSLRA stay.

*First*, Plaintiffs do not seek "particularized discovery."  A discovery request is "particularized" when it is "directed at specific persons and identifies specific types of evidence that fall within its scope."  *Mori v. Saito*, 802 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (internal quotations omitted).  Here, rather than target specific documents or custodians, Plaintiffs request "at minimum . . . access to the more than one million pages of documents that BNYM has produced to the other MDL plaintiffs."  Status Rep. 9.  Plaintiffs' undifferentiated request for

---

[10] *See In re Refco, Inc.*, No. 05-cv-8626, 2006 WL 2337212, at *1 (S.D.N.Y. Aug. 8, 2006) ("exceptional circumstances must be present to lift the stay") (internal quotations omitted); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-cv-5575, 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003) (same).

every document in this MDL – many of which are irrelevant to the securities claims[11] – seeks the sort of "open-ended, boundless . . . discovery" that courts routinely reject as incompatible with the PSLRA.  *Mishkin*, 220 B.R. at 793; *see Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 404 (S.D.N.Y. 2001) (rejecting request for "all documents, testimony and transcripts that have been previously produced or will be produced in the future" to other plaintiffs).[12]

*Second*, Plaintiffs have not shown that the PSLRA stay causes them "undue prejudice." "The Southern District has defined undue prejudice" under the PSLRA as "improper or unfair treatment amounting to something less than irreparable harm." *380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07-cv-1204, 2007 WL 2049738, at *1 (S.D.N.Y. July 18, 2007) (internal quotations and brackets omitted).  Plaintiffs argue that lifting the PSLRA stay will allow them to participate in the MDL "more expeditiously and efficiently" and to "coordinate discovery" with other plaintiffs.  Status Rep. 10.  These factors cannot support a finding of undue prejudice.  *See AOL Time Warner*, 2003 WL 22227945, at *2 (S.D.N.Y. Sept. 26, 2003) (denying motion based on interest in "'keeping all parties on an equal footing with respect to discovery'").  The PSLRA's core premise is that securities actions "should be treated differently than other actions."  *Refco*, 2006 WL 2337212, at *2.  Differential treatment for securities plaintiffs is therefore not unfair.  It is what Congress intended.  *See id.*

*In re WorldCom, Inc. Securities Litigation*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002), on which Plaintiffs rely at page 10 of the Joint Status Report, only illustrates the point.  As this

---

[11] *See, e.g.*, BNYM-OE-00032677-00046725 (BNYM custody contracts and fee schedules with various ERISA plans); BNYM-OE-00498310-00502568 (monthly account statements made available to class representative's investment manager).  That "not all of the documents" encompassed by Plaintiffs' indiscriminate request "would be relevant to this litigation . . . . alone demonstrates a lack of particularity inconsistent with" the PSLRA.  *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C. 2005).

[12] *See also In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1107 (C.D. Cal. 2007) (denying request for "all documents produced by Defendants to the California Attorney General's Office" in parallel litigation); *Fannie Mae*, 362 F. Supp. 2d at 39 (denying request for "documents that have already been produced in connection with governmental and regulatory investigations").

11

Court has recognized, that case set a high bar for the type of prejudice required to lift the PSLRA stay: its "unique circumstances," including global settlement negotiations and WorldCom's impending insolvency, threatened to "leave plaintiffs without a remedy" if discovery were stayed. *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-md-2017, at 2 n.9 (S.D.N.Y. Dec. 11, 2009) (Kaplan, J.) (internal quotations omitted).[13] Neither circumstance is present here. Instead, as in *Lehman*, Plaintiffs assert merely a generalized need to "make informed litigation . . . decisions." *Id.* at 2. Plaintiffs' generic desire to coordinate with other litigants – an interest ubiquitous in multidistrict litigation – does not support lifting the PSLRA stay. *Id.* at 2-3; *see AOL Time Warner*, 2003 WL 2227945, at *2 (noting that allowing MDL plaintiffs "to share the fruits of their discovery with the Securities plaintiffs would render the PSLRA's stay provision a nullity").[14]

## CONCLUSION

The Court should decide the motions to dismiss after full consideration, and Plaintiffs' request that this Court lift the PSLRA discovery stay should be denied.

---

[13] Plaintiffs also cite (at 10) *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 09-mdl-2058, 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009). That case involved parallel securities litigation by the SEC, and the plaintiffs sought documents that had already been "collected, reviewed, and organized . . . for production" to the SEC. 2009 WL 4796169, at *3. As a result, the Court concluded that producing those documents to the securities plaintiffs as well would impose only the "slight" burden of "making another copy." *Id.* Here, by contrast, the SEC has not sued BNYM Corp., Plaintiffs seek new securities-specific discovery that goes well beyond anything BNYM has specifically produced, and the securities action also imposes discovery burdens on parties who would otherwise not be part of this MDL at all. *See supra* pp. 5, 9-10.

[14] *See also In re Merck & Co. Sec. Litig.*, No. 08-cv-2177, 2009 WL 1456615, at *1 (D.N.J. May 22, 2009) (holding that plaintiffs' asserted inability to coordinate with "related multidistrict litigation" was not "undue prejudice"); *Sisk v. Guidant Corp.*, No. 05-cv-1658, 2007 WL 1035090, at *3-*4 (S.D. Ind. Mar. 30, 2007) (harm from falling behind parallel litigation is insufficient because it is "inherent in all stays of discovery") (internal quotations omitted).

12

| | |
|---|---|
| Dated:  May 28, 2013 | Respectfully submitted,<br><br>THE BANK OF NEW YORK MELLON CORPORATION<br><br>OFFICER AND DIRECTOR DEFENDANTS<br><br>*/s/ Reid M. Figel*<br>Reid M. Figel (RF-8663)<br>Rebecca A. Beynon (*pro hac vice*)<br>David L. Schwarz (*pro hac vice*)<br>Derek T. Ho (DH-0104)<br>Gregory G. Rapawy (*pro hac vice*)<br>Joshua D. Branson (*pro hac vice*)<br>KELLOGG, HUBER, HANSEN, TODD,<br>  EVANS & FIGEL, P.L.L.C.<br>1615 M Street, NW, Suite 400<br>Washington, DC 20036<br>Telephone:  (202) 326-7900<br>Facsimile:  (202) 326-7999<br>rfigel@khhte.com<br>rbeynon@khhte.com<br>dschwarz@khhte.com<br>dho@khhte.com<br>grapawy@khhte.com<br>jbranson@khhte.com<br><br>*Counsel for The Bank of New York Mellon Corporation and Officer and Director Defendants* |