KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

March 4, 2014

*Via ECF and Hand Delivery*
Hon. James L. Cott, Daniel Patrick Moynihan Courthouse
500 Pearl Street, New York, NY 10007

Re:   *In re Bank of New York Mellon Corporation Foreign Exchange Transactions Litigation*,
      No. 12 MD 2335 (LAK); *Louisiana Municipal Police Employees' Retirement System v.
      The Bank of New York Mellon Corporation*, No. 11 Civ. 9175 (LAK)

Dear Judge Cott:

Pursuant to § II(B)(3) of the Pilot Project order, No. 12-md-2335 (Dkt. No. 2), Defendant The Bank of New York Mellon Corporation ("BNYM") respectfully requests leave to file this reply in support of its renewed motion to compel Plaintiffs to produce documents. *See* Dkt. No. 363 ("Mot."). BNYM's motion seeks evidence relevant to one of BNYM's central defenses: that Plaintiffs knew (or should have known) that the rates BNYM assigned to standing instruction FX transactions did not, as Plaintiffs now claim to have believed, match the rates that BNYM could obtain from other banks when trading for its own account. *See* Mot. 2-3 & n.5. BNYM has already shown that the documents it seeks are essential to that defense, *see id.* at 3-4, and that its renewed motion is consistent with the October 24 Order (Dkt. No. 299), *see* Mot. 1, 5 & n.9. BNYM writes to emphasize three additional points.

*First*, BNYM's motion is timely. Plaintiffs argue (Dkt. No. 364, at 2) that the motion is time-barred because it was filed after the 14-day deadline for "motions for reconsideration." But BNYM is not seeking reconsideration. The October 24 Order addressed (at 5) "the present record" then before the Court, and it held only that "additional production" was not "warranted at this time." BNYM's present motion is based on an expanded factual record, and it seeks a narrower set of documents whose relevance has now been established by that record. Courts routinely revisit discovery orders in such circumstances, *see* Mot. 5 & n.9, and BNYM's request for such relief is not subject to the deadline for "reconsideration" motions.[1]

In any event, BNYM's motion should be deemed timely even if treated as a reconsideration motion. The deadline for such motions does not apply if "otherwise provided by the Court," Local R. 6.3, and this Court has ample "discretion" to extend the deadline. *Grand Grossing, L.P. v. United States Underwriters Ins. Co.*, No. 03-cv-5429, 2008 WL 4525400, at *1-2 (S.D.N.Y. Oct. 6, 2008).[2] Here, assuming that the deadline applies, it is appropriate for the Court to exercise that discretion because BNYM's present motion is based almost entirely on

---

[1] *See, e.g.*, *City of New York v. Grp. Health, Inc.*, No. 06-cv-13122, 2009 WL 1181056, at *1 n.1 (S.D.N.Y. Apr. 30, 2009) (court "reconsider[ed]" and granted a "[r]enewed Motion to Compel" over a year after denying first motion); *Sidari v. Orleans Cnty.*, No. 95-cv-7250, 2000 WL 33407343, at *9 (W.D.N.Y. Oct. 3, 2000) (granting "renewed motion to compel discovery" separate from "motion for reconsideration" of prior order).

[2] *See also B.D. Cooke & Partners Ltd. v. Certain Underwriters at Lloyd's, London*, No. 08-cv-3435, 2010 WL 779783, at *2 (S.D.N.Y. Mar. 9, 2010) (collecting cases granting extension of the Rule 6.3 deadline).

documents that were produced well after the October 24 Order.  *See* Mot. 5.[3]  After receiving those documents, BNYM initiated an extensive meet-and-confer process – involving numerous phone calls and letters, *see*, *e.g.*, *id.*, Exh. U at 2-3 – and filed this motion promptly once the parties reached impasse.  Under Plaintiffs' theory, however, BNYM was obligated to file its motion by November 7 – before Plaintiffs had produced virtually any substantive documents.  That is not the law.  *See Allen v. Northwest Permanente, P.C.*, No. 12-cv-0402, 2012 WL 5996935, at *3 (D. Or. Nov. 30, 2012) (reconsideration motion based on "new evidence" timely where movant "did not have [the new] documents" at time of first order).

*Second*, Plaintiffs fail to justify withholding documents about State Street's compliance with "best execution" standards.  The record suggests that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ that it now claims (Compl. ¶ 112) violated "customary notions of 'best execution'" when used by BNYM.  *See* Mot. 4 (citing Exhs. H, I, & T).  That undermines Plaintiffs' claim that they reasonably relied on BNYM's statements about "best execution."  Indeed, if Plaintiffs thought that State Street's custody FX service delivered "best execution," it is implausible that they interpreted BNYM's statement about "best execution" as a promise to offer radically better rates than State Street.  It is also probative of the proper industry definition of "best execution," which Plaintiffs have conceded is relevant.  *See id* at 4-5.  And because Oregon *itself* required transactions with State Street to deliver "best execution," Plaintiffs' response (at 5) that State Street did not "represent[] to Oregon that its FX transactions complied with 'best execution'" is beside the point.

Plaintiffs' further efforts to downplay the documents BNYM cites are unavailing.  The few documents Plaintiffs have produced show that:  (1) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, Exh. O (ORE-0009457, at 57); (2) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, Exh. H (ORE-0009454, at 54); and (3) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, *see* Mot. 4 & n.7.  Although Plaintiffs dispute (at 3-4) the inferences to be drawn from some of those documents, the existence of such factual disputes merely heightens the need for further discovery.  *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 138 (S.D.N.Y. 2012) (Cott, M.J.) (document discoverable if there is "any possibility" it will prove "relevant") (internal quotations omitted).  Indeed, given that Plaintiffs' production regarding FX practices has been virtually non-existent, BNYM cannot reasonably be held to a more stringent standard.

*Finally*, Plaintiffs' claim (at 5) of "enormous burden" is meritless.  Rather than respond to BNYM's requests to test its proposed search terms, *see* Exh. B at 8, Exh. U at 2-3, Plaintiffs merely assert (at 5) that those terms are "astonishingly broad."  But they agreed conditionally to run two of those terms if BNYM would agree they could manually screen from their production all documents relating to State Street.  *See* Mot. 5 n.8 (citing Exh. V).  Such manual screening would have entailed more effort than simply complying with BNYM's requests.  Plaintiffs' offer thus suggests strongly that they are concerned not about burden, but about preventing BNYM from obtaining documents to aid its defense.  Moreover, Plaintiffs have even refused to produce three specific documents that BNYM identified – one of which was an attachment to an email Plaintiffs already produced.  *See id. at* 1; Exh. B at 6.  Plaintiffs' conclusory assertion of burden thus deserves no weight.  *See* Mot. 5 (citing authority).

---

[3] Although Plaintiffs assert (at 2) that BNYM "cited to Judge Kaplan some of the very same documents" at issue here, only *one* of the sixteen documents BNYM cites falls into that category:  OHIO_0321349 (Exh. F).

| | |
|---|---|
| Dated:  March 4, 2014 | Respectfully submitted,<br><br>THE BANK OF NEW YORK MELLON CORPORATION<br><br>  /s/ Reid M. Figel                                    <br>Reid M. Figel (RF-8663)<br>Rebecca A. Beynon (*pro hac vice*)<br>David L. Schwarz (*pro hac vice*)<br>Derek T. Ho (DH-0104)<br>Gregory G. Rapawy (*pro hac vice*)<br>Andrew C. Shen (AS-7963)<br>KELLOGG, HUBER, HANSEN, TODD,<br>  EVANS & FIGEL, P.L.L.C.<br>1615 M Street, NW, Suite 400<br>Washington, DC 20036<br>Telephone:  (202) 326-7900<br>Facsimile:  (202) 326-7999<br>rfigel@khhte.com<br>rbeynon@khhte.com<br>dschwarz@khhte.com<br>dho@khhte.com<br>grapawy@khhte.com<br>ashen@khhte.com<br><br>*Counsel for The Bank of New York Mellon Corporation* |