**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re:<br><br>BANK OF NEW YORK MELLON CORP.<br>FOREX TRANSACTIONS LITIGATION<br><br>This Document Relates to: 11-CV-09175 | ) ) ) ) ) ) ) ) ) | **CIVIL ACTION NO.**<br>MASTER FILE<br>12 MD 2335 (LAK) |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF'S**
**MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Max W. Berger
John C. Browne
Jeremy P. Robinson
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Settlement Class*

Dated: December 28, 2016

## TABLE OF CONTENTS

I. BACKGROUND .......... 1

II. CLAIMS ADMINISTRATION .......... 2

III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR .......... 7

IV. DISTRIBUTION PLAN OF THE NET SETTLEMENT FUND .......... 8

V. RELEASE OF CLAIMS .......... 10

VI. CONCLUSION .......... 11

Lead Plaintiff, the State of Oregon, by and through the Oregon State Treasurer on behalf of the Common School Fund and, together with the Oregon Public Employee Retirement Board on behalf of the Oregon Public Employee Retirement Fund ("Oregon"), respectfully submits this memorandum in support of its motion for entry of the proposed Order Approving Distribution Plan (the "Distribution Order") for the proceeds of the Settlement in the above-captioned action (the "Action"). The Distribution Plan is set forth in the accompanying Declaration of Stephanie A. Thurin in Support of Lead Plaintiff's Motion for Approval of Distribution Plan (the "Thurin Declaration" or "Thurin Decl."),[1] submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq").

If entered by the Court, the Distribution Order will, among other things, (i) approve Epiq's administrative recommendations accepting and rejecting Proofs of Claim submitted in the Action, including the Claims being put before the Court on this motion based on the Claimants' requests for judicial review; (ii) direct the distribution of the Net Settlement Fund to Claimants whose Claims have been accepted as valid and approved by the Court, while maintaining a Reserve for any contingencies that may arise; and (iii) approve Epiq's fees and expenses incurred and estimated to be incurred in connection with the administration of the Settlement.

## I. BACKGROUND

The Court has approved the Stipulation (ECF No. 266-1) entered into by Lead Plaintiff and Defendants. The Stipulation sets forth the terms of the settlement (the "Settlement") which

---

[1] Unless otherwise indicated herein, all terms with initial capitalization shall have the meanings ascribed to them in the Thurin Declaration or in the Stipulation and Agreement of Settlement filed June 23, 2015 (ECF No. 266-1) (the "Stipulation"). References herein to "ECF No. __" are to Case No. 11-CV-09175.

represents a complete resolution of this Action. Pursuant to the terms of the Settlement, $180 million was deposited in escrow for the benefit of the Settlement Class.

In accordance with the Notice Order Concerning Proposed Settlement (ECF No. 270) ("Notice Order"), Epiq has mailed the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release form (the "Proof of Claim" and, together with the Notice, the "Settlement Notice Packet") to potential Settlement Class Members and to brokers and other nominees. As set forth in the Thurin Declaration, Epiq has mailed 962,913 Settlement Notice Packets to potential Settlement Class Members and nominees. Thurin Decl. ¶ 4. The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit Proofs of Claim by mail, postmarked no later than December 11, 2015.

The Court granted final approval to the Settlement and the Effective Date has occurred. Accordingly, the Net Settlement Fund may be distributed to Authorized Claimants. Pursuant to the Stipulation,[2] Lead Plaintiff respectfully asks the Court to enter the Distribution Order approving the Distribution Plan.

## II. CLAIMS ADMINISTRATION

As detailed in the accompanying Thurin Declaration, through December 16, 2016, Epiq received 356,086 Proofs of Claim of which 355,681 have been fully processed. Thurin Decl. ¶ 6. Many of the Proofs of Claim initially submitted were deficient or ineligible for one or more reasons,

---

[2] *See* Stipulation ¶ 26.

including being incomplete, not signed, not properly documented, or being otherwise deficient. Thurin Decl. ¶¶ 8 - 20.

If a paper Proof of Claim was determined to be defective or ineligible, a Notice of Deficient Proof of Claim Submission ("Deficiency Notice") was sent to the Claimant describing the defect(s) or condition(s) of ineligibility in his, her or its Proof of Claim and what was necessary to cure any "curable" defect(s) in the Proof of Claim. *Id.* ¶ 21. The Deficiency Notice advised the Claimant that the submission of the appropriate information and/or documentary evidence to complete the Proof of Claim had to be sent within twenty (20) days from the date of the letter or the Proof of Claim would be recommended for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. An example of the Deficiency Notice is attached as Exhibit A to the Thurin Declaration. Thurin Decl. ¶ 21 and Exhibit A thereto.

If an Electronic Claim was determined to be defective or ineligible, Epiq notified the filer of the deficiencies or conditions of ineligibility by sending an email attaching a Transaction Report which listed the specific Claims which were incomplete along with a list of the specific portions of Claims that were incorrect or incomplete so that the conditions could be cured. Thurin Decl. ¶ 23. The email advised the filer that any deficient transactions or Claims that remain uncured will remain rejected, and it informed the filer that, it could, on behalf of the Claimant, request the Court to review Epiq's administrative determination if it wished to contest the rejection of any transactions or Claims. *Id.*

Epiq carefully reviewed Claimants' and filers' responses to the rejection letters and Transaction Reports and worked with them to resolve deficiencies where possible. Thurin Decl. ¶¶ 22, 24. Consistent with the terms of the Stipulation (¶ 24(e)), the Deficiency Notice and emails to filers of Electronic Claims specifically advised the Claimant or filer that he, she or it had the right,

within twenty (20) days after the mailing of the Deficiency Notice or email, to contest the rejection of the Claim and request Court review of the administrative determination of the Claim. Thurin Decl. ¶¶ 21, 25 and Exhibit A thereto.

Epiq received 78 requests for a review by the Court of its administrative determinations. Thurin Decl. ¶ 26. In an effort to resolve the disputes without necessitating the Court's intervention, Epiq attempted to contact all of the persons requesting Court review. With respect to those Claimants who were reached, Epiq answered all of their questions, and fully explained Epiq's determination of the Claim's status, and facilitated the submission of missing information or documentation where applicable. As a result of these efforts, 68 Claims for which Court review had been requested have either been cured or the request for Court review has been retracted. *Id.*

With respect to the 10 Claims with outstanding requests for judicial review of Epiq's determinations to reject the Claims (each a "Disputed Claim"), they are being presented to the Court for resolution by this motion. The reasons that the Disputed Claims were rejected are briefly summarized in the following chart:

| | |
|---|---|
| **Reason for Rejection:** | **No purchases of BNYM common Stock during the Settlement Class Period (February 28, 2008 through and including October 4, 2011).** |
| No. 1. | Claimant had 45 shares of BNYM common stock all of which were owned as of the start of the Settlement Class Period. |
| No. 2. | Claimant had 45 shares of BNYM common stock all of which were owned as of the start of the Settlement Class Period. |
| **Reason for Rejection:** | **Claimant did not hold any shares of BNYM common stock over a corrective disclosure. In each case, all shares were sold before the first corrective disclosure that occurred after the close of trading on February 2, 2011.** |
| No. 3. | Claimant purchased 1,000 shares during the Settlement Class Period, all of which were sold on November 5, 2010. |
| No. 4. | Claimants purchased 20 shares on the first day of the Class Period, all of which (along with prior holdings) were sold as of October 8, 2008. |
| No. 5. | Claimant purchased 38 shares during the Settlement Class Period, all of which (along with prior holdings) were sold on October 9, 2008. |
| No. 6. | Claimant purchased 20 shares on the first day of the Settlement Class Period, all of which (along with prior holdings) were sold on October 8, 2008. |

| | |
|---|---|
| No. 7. | Claimants purchased 69 shares during the Settlement Class Period, all of which (along with prior holdings) were sold as of September 13, 2010. Additionally, these Claimants are ineligible as they had an overall market gain on their transactions. |
| No. 8. | Claimants purchased 310 shares during the Settlement Class Period, all of which were sold as of April 28, 2009. |
| No. 9. | Claimant purchased 300 shares during the Settlement Class Period, all of which were sold on June 26, 2009. |
| **Reason for Rejection: Claimant had an overall market gain on transactions in BNYM common stock during the Settlement Class Period.** | |
| No. 10. | Claimant purchased 140 shares during the Settlement Class Period at a total cost of $3,448.33. He sold those shares during the Settlement Class Period for total proceeds of $4,041.70. |

A more detailed description of the Disputed Claims is set forth in paragraphs 27 to 30 of the Thurin Declaration, and Exhibit B to the Thurin Declaration contains a Disputed Claims Chart which sets forth the specifics of each of the Disputed Claims and the reason for its rejection. Exhibit B also includes copies of the Proofs of Claim and supporting documentation as originally submitted as well as additional correspondence related to the Disputed Claims. Lead Counsel has reviewed the Disputed Claims and concurs with Epiq's recommendations to reject them.

As set forth in the Thurin Declaration, of the 355,681 Claims that have been fully processed to date, Epiq has determined that 101,351 are acceptable in whole or in part, and that 254,330 should be wholly rejected because they are ineligible for payment from the Net Settlement Fund. Thurin Decl. ¶ 37. Lead Plaintiff requests that the Court approve Epiq's administrative determinations accepting and rejecting Claims as set forth in the Thurin Declaration.

The 356,086 Proofs of Claim received through December 16, 2016 include 76,143 that were postmarked or received after the Court-approved Claim filing deadline of December 11, 2015. Of those late Claims, 75,738 have been fully processed and 30,854 of them are, but for the late submission, otherwise eligible. Thurin Decl. ¶ 31. The late Claims were received either (a) while the processing of timely Claims was ongoing, and due to the amount of time needed to process the

timely Claims received, the processing of these late Claims did not delay the completion of the claims administration process or the distribution of the Net Settlement Fund; or (b) while this motion was being prepared and, because of the presence of Disputed Claims, allowing these additional Claims to the extent they are otherwise eligible will not delay the distribution of the Net Settlement Fund.[3] Lead Plaintiff requests that all otherwise eligible late Claims received up through the date of the filing of this motion (the "Motion Date") be allowed as that will afford the opportunity for as many Class Members as possible to participate in the Settlement while still not delaying the distribution. The Court has discretion to accept Claims submitted after the filing deadline.[4] It is respectfully submitted that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the Net Settlement Fund solely because it was submitted after the Court-approved Claim filing deadline when its acceptance will not delay the distribution of the Net Settlement Fund.

[3] In order to afford Disputing Claimants every opportunity to support their position, the motion papers are being sent to them and they are being advised that they will have thirty (30) days in which to make a further submission to the Court should they wish to do so. Because these papers are being filed during the holiday season, Lead Counsel believes that a slightly longer time period than it usually provides for Claimant supplemental submissions (*i.e.*, twenty-one (21) days) is appropriate. Lead Plaintiff will then submit a reply. During this period, the Claims Administrator will be able to complete the processing of Claims received as of the Motion Date, including affording those Claimants the opportunity to cure defects in their Claims. A supplemental submission reflecting the Claims Administrator's recommendations as to the acceptance and rejection of the late Claims not included in these opening papers will be presented to the Court along with Lead Plaintiff's reply papers concerning the Disputed Claims. *See* Thurin Decl. ¶ 31.

[4] *See* Notice ¶ 47 ("*Unless the Court otherwise orders*, any Settlement Class Member who fails to submit a Claim Form postmarked no later than December 11, 2015, shall be fully and forever barred from receiving payments pursuant to the Settlement . . .") (emphasis added); *see also* Notice Order at ¶ 9 ("Unless the Court orders otherwise, all Proof of Claim Forms must be postmarked no later than one hundred twenty (120) calendar days after the Notice Date [December 11, 2015]. Notwithstanding the foregoing, Lead Counsel may, at their discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class.").

In order to facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off after which no other Proofs of Claim may be accepted. Accordingly, Lead Plaintiff respectfully requests that the Court order that any new Claims and any adjustments to previously filed Claims that would result in an increased Recognized Claim amount that are received after the Motion Date be barred[5] subject to the provision of subparagraph 42(d) of the Thurin Declaration. That paragraph provides that, if Proofs of Claim are received or modified after the Motion Date that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if timely received then, at the time that Lead Counsel, in consultation with Epiq, determines that a re-distribution is not cost effective as provided in subparagraph 42(c)(ii) of the Thurin Declaration, such Claimants, after payment of fees and expenses as set forth in subparagraph 42(d) of the Thurin Declaration, at the discretion of Lead Counsel, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible.

## III. <u>FEES AND EXPENSES OF CLAIMS ADMINISTRATOR</u>

In accordance with Epiq's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, Epiq was responsible for, among other things, mailing and publishing notice to the Settlement Class, creating and maintaining a settlement website and toll-free telephone helpline, processing the Proofs of Claim, and allocating and distributing the Net Settlement Fund to Authorized Claimants. As set forth in the Thurin Declaration, Epiq's fees and expenses for its work performed and estimated to be performed on behalf of the Settlement Class in connection with the

---

[5] Should an adjustment be received that results in a lower Recognized Claim amount, that adjustment will be made and the Recognized Claim amount will be reduced accordingly prior to a distribution to that Claimant.

Initial Distribution of the Net Settlement Fund total $2,919,782.38. Thurin Decl. ¶ 41. To date, Epiq has not received any payment. *Id*. Lead Counsel has reviewed Epiq's invoices and respectfully requests on behalf of Lead Plaintiff that the Court approve all of Epiq's fees and expenses.

## IV. DISTRIBUTION PLAN OF THE NET SETTLEMENT FUND

Lead Plaintiff, on notice to Defendants' Counsel, respectfully moves the Court for an order approving Epiq's determinations concerning the acceptance and rejection of the Claims that are included in this motion and approving the proposed plan for distribution of the Net Settlement Fund as set forth in the Thurin Declaration (the "Distribution Plan").[6]

### Initial Distribution of Net Settlement Fund

Pursuant to the proposed Distribution Plan, Epiq will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting all payments previously allowed and the payments approved by the Court on this motion, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees. In the Initial Distribution, Epiq will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *See* Thurin Decl. ¶ 42(a). Pursuant to the Court-approved Plan of Allocation, Epiq will eliminate from the distribution any Authorized Claimant whose *pro rata* share calculates to less than $20.00 (such Claimants shall not receive any payment from the Net Settlement Fund and will be so notified by Epiq), and Epiq will then re-calculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $20.00 or more (the

[6] Under the terms of the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 18, 23.

"Distribution Amount"). *Id.* ¶¶42(a)(ii) and (a)(iii). Authorized Claimants whose Distribution Amount is less than $100.00 pursuant to the calculations set forth in subparagraph 42 (a)(iii) of the Thurin Declaration will receive their full Distribution Amount in the Initial Distribution ("Claims Paid in Full") and will receive no additional funds in subsequent distributions. *Id.* ¶ 42(a)(iv). Authorized Claimants whose Distribution Amount is $100.00 or more shall be paid 95% of their Distribution Amount in the Initial Distribution, with the remaining 5% held in reserve (the "Reserve") to address any contingencies that may arise. *Id.* ¶ 42(a)(v). To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id.*

In order to encourage Authorized Claimants to promptly deposit their payments, Lead Plaintiff proposes that the Distribution checks bear the notation, "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." Authorized Claimants who do not cash their checks within the time allotted or on the conditions set forth in paragraph 42(a)(vi) footnote 6 of the Thurin Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks will be available to be redistributed to other Authorized Claimants in subsequent distributions. *Id.* ¶ 42(a)(vii).

**Additional Distribution(s) of Net Settlement Fund**

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, but no earlier than nine (9) months after the Initial Distribution, Epiq will, conduct a second distribution of the Net Settlement Fund (the "Second Distribution") in which any amounts remaining in the Net Settlement Fund after the Initial Distribution (including the funds for all void stale-dated checks), after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such

Second Distribution), and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who (1) were not Claims Paid in Full; (2) cashed their Initial Distribution check; and (3) would receive at least $20.00 from such distribution based on their *pro rata* share of the remaining funds. Thurin Decl. ¶ 42(b). If cost effective, subsequent re-distributions of the funds remaining in the Net Settlement Fund, after deduction of costs and expenses as described above and subject to the same conditions, will take place in nine-month intervals thereafter. *Id.* ¶ 42(c)(i). At such time as Lead Counsel, in consultation with Epiq, determines that further re-distribution of remaining funds is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after the Motion Date, Epiq will process such Claims and any such Claims that are otherwise valid as well as any earlier received Claims for which an adjustment was received after the Motion Date which resulted in an increased Recognized Claim may be paid in accordance with the provisions subparagraph 42(d) of the Thurin Declaration. If any funds remain in the Net Settlement Fund after payment of such late or late adjusted Proofs of Claim, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s), pursuant to the provisions of ¶ 67 of the Notice. Thurin Decl. ¶ 42 (c).

## V. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or

otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement, and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to Authorized Claimants.

## VI. CONCLUSION

For the foregoing reasons, it is respectfully submitted that Lead Plaintiff's Motion for Approval of Distribution Plan should be granted, and the proposed Order Approving Distribution Plan should be entered.

Dated: December 28, 2016

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ John C. Browne*
Max W. Berger
John C. Browne
Jeremy P. Robinson
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

***Counsel for Lead Plaintiff Oregon and Lead Counsel for the Settlement Class***

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
Keith Ketterling
Keith Dubanevich
Keil Mueller
209 Southwest Oak Street
Portland, Oregon 97204

***Special Assistant Attorneys General and Additional Counsel for Lead Plaintiff Oregon***

#1043587